**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RONALD BENEDETTO, JR., | : | Civil No. 97-2498(GEB) |
|  | : |  |
| Petitioner, | : |  |
|  | : |  |
| v. | : | **O P I N I O N** |
|  | : |  |
| Ronald H. Cathel, et al., | : |  |
|  | : |  |
| Respondents. | : |  |

**APPEARANCES:**

Alan Dexter Bowman, Esquire
Attorney for Petitioner
Gateway One, Suite 105
Newark, NJ 07102
(973) 622-2225

Barbara A. Rosenkrans, Esquire
Attorney for Respondents
Assistant Prosecutor
Essex County Prosecutor's Office
Essex County Courts Building
Newark, NJ 07017

**BROWN, Chief District Judge**

　　Petitioner, Ronald Benedetto, Jr., filed the within petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254 [Docket Entry #1]. Respondents have filed an Answer. The Court has considered all submissions. For the reasons set forth below, the Petition is dismissed with prejudice as untimely.

**BACKGROUND**

1.  Factual Background

The facts of this case were recounted in the Opinion of the New Jersey Superior Court, Appellate Division and this Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply reproduce that factual recitation:

> In November, 1986, Ronald Benedetto, Jr., then sixteen years old, was charged in a juvenile delinquency complaint with the first degree murder of Anthony Mautone and with unlawful possession of a weapon. Following a hearing pursuant to R. 5:22-2, the Chancery Division, Family Part, waived jurisdiction over the matter, and defendant was prosecuted as an adult. The ensuing indictment charged him with purposeful or knowing murder, N.J.S.A. 2C:11-3(a)(1) and (2), and weapons offenses under N.J.S.A. 2C:39-5(b) and -4(a). A jury found defendant guilty of these charges [on January 29, 1988], and [on March 25, 1988] he was sentenced to a term of life imprisonment subject to a 30-year parole ineligibility for the murder and a concurrent five-year term on the second-degree weapon charge into which the lesser weapon charge was merged.
>
> During the early morning hours of October 6, 1986, Mautone, a disc jockey, was shot in the back of his head and killed in the garage he used as a studio. The theory of the State's case was that Mautone, a some time cocaine distributor who had from time to time supplied defendant, was lured by defendant to the studio late at night where defendant killed him because Mautone owed his father $7,000. Defendant's father, Ronald Benedetto, Sr., was also charged with murder and related offenses in the same indictment, but the charges against him were severed.
>
> The evidence against defendant, other than his alleged admissions, was largely circumstantial. A Mrs. Rivera, who lived on the same street as the studio and who was looking out of her window at about 2:00 a.m. waiting for her daughter to come home, saw a person wearing a two-tone denim jacket walking back and forth along the street, saw that

2

person greet Mautone when Mautone arrived, and then saw them enter the studio together. About an hour later she heard what she later realized must have been a gunshot. She was unable, however, to make any identification of the person, even as to sex. She could only describe the jacket. A similar jacket was later found in defendant's room in his home. A laboratory analysis of the contents of its pockets revealed a trace amount of lead in one of them, which, while not positively identifiable as gunshot residue, was nevertheless opined by the testifying forensic scientist to have been a substance which would have been left on a gun after its firing. She further explained, however, that the residue was of the type of lead also used in such common items as solder, battery terminals, and plumbing appliances.

The "admission" evidence was adduced by the State by way of the testimony of two of defendant's friends, Robert Scruggs and Robert Gregoire. Both testified to an occasion in October 1986 when the three youths, together with several other friends, met at the railroad tracks in Belleville, and defendant told them he had shot someone in the head. Gregoire also testified that defendant had told him he had done so for his father, and in fact had telephoned him, Gregoire, shortly after the murder to describe it to him. Indeed, Gregoire also testified that prior to the murder, he had seen defendant with a revolver and had been told by him that he wanted to hurt Mautone because of the debt Mautone owed his father. In November 1986, now wearing a recording device supplied by the investigating police, Gregoire again engaged defendant in conversation about the murder. The audio recording of the conversation, during which defendant made remarks construable as an admission to the murder but not directly referring to it, was admitted into evidence.

The final damaging evidence against defendant was the testimony of Anna Prassinos, Mautone's girlfriend, who had met him at the nightclub in which he was working as a disc jockey on the night of the murder. At sometime after midnight he told her that he could not return with her to her home when he finished work as he usually did because he had received a telephone call from defendant, who needed cocaine, and he was going to his studio to meet him. Ms. Prassinos also was permitted to testify that Mautone had told her that evening that he owed defendant's father $7,000 and had been threatened because of the debt.

(<u>State v. Benedetto</u>, A-4618-87T3 (March 16, 1989), pp. 1-4).

2. <u>Procedural History</u>

Subsequent to his trial and conviction (*infra*), Petitioner appealed his sentence. On appeal, Petitioner argued in part that the state trial court had erred in admitting the hearsay statements of witness Anna Prassinos under Rule 63(12) as a state of mind exception, and that such admittance resulted in prejudicial testimony which deprived Petitioner of his right to confrontation and a fair trial. On March 16, 1989, the Superior Court of New Jersey, Appellate Division, agreed with Petitioner and reversed the conviction. On July 18, 1990, the New Jersey Supreme Court reversed the Appellate Division and reinstated Petitioner's conviction and sentence.

On December 9, 1992, Petitioner filed a Petition for Post-Conviction Relief ("PCR") in state trial court. Petitioner's PCR motion was subsequently denied.

Petitioner then filed a Notice of Appeal with the Superior Court of New Jersey, Appellate Division challenging the trial court's denial of Petitioner's application for PCR.

On November 2, 1995, the Superior Court of New Jersey, Appellate Division affirmed the denial of PCR, relying upon the reasons of denial as set forth by the trial court in its entirety.

Thereafter, Petitioner filed a Motion to File Petition for Certification to the New Jersey Supreme Court. On March 26,

1996, the New Jersey Supreme Court denied Petitioner's motion for certification.

On May 14, 1997, Petitioner filed the instant Habeas Corpus Petition pursuant to 28 U.S.C. § 2254.  On May 14, 1997, the Honorable John W. Bissell, United States District Judge, ordered Respondents to Answer Petitioner's habeas motion by July 14, 1997.  On July 11, 1997, Respondents filed their Answer.  On April 30, 1998, Judge Bissell entered an Order administratively terminating Petitioner's habeas motion.  On March 30, 2001, Petitioner filed a second petition for PCR.  On July 2, 2003, the state court denied Petitioner's second PCR motion.

Petitioner subsequently moved to have the federal habeas case re-opened, and on August 23, 2005, Judge Bissell entered an Order vacating the April 30, 1998 Order in part and granting Petitioner's Motion to Reopen the Case.  Petitioner filed an amended petition on September 19, 2005.  On October 11, 2005, Respondents filed a Motion to Stay Proceedings, pending disposition of a related Third Circuit Court of Appeals motion.  On November 9, 2005, the case was reassigned to this Court.  On November 22, 2005, this Court granted Respondent's Motion to Stay Proceedings.  On April 11, 2006, this Court entered an Order lifting the stay and reopening the case.  On June 7, 2006, Respondents filed their Answer.

5

## DISCUSSION

**Petitioner's Claims.**

Petitioner asserts the following arguments for habeas relief:

1. Ground One - ineffective assistance of trial counsel due to counsel's failure to: present alibi and exculpatory witnesses; suppress evidence; and call Petitioner as a witness.
2. Ground Two - violation of Petitioner's constitutional right to testify by trial court and trial counsel.
3. Ground Three - violation of Petitioner's right to a fair trial by trial court's error in admitting hearsay statement of witness Anna Prassinos.
4. Ground Four - violation of right of confrontation by trial court by not permitting cross-examination of witness Robert Gregoire regarding his criminal record.
5. Ground Five - trial court erred by permitting tape of conversation of Petitioner and witness as its probative value was outweighed by its prejudicial nature.
6. Ground Six - trial court erred by admitting evidence regarding trace element of lead.

See Petition for Writ of Habeas Corpus.

### A. **Pro Se Standard.**

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

6

B. **<u>Petitioner's Writ of Habeas Corpus Is Procedurally Barred.</u>**

   i. *petition is time-barred from bringing the instant § 2254 motion*

According to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, Petitioner had one-year from the date his conviction became final to file his petition for a writ of habeas corpus. See 28 U.S.C. § 2244(d)(1).[1] Tolling of the one-year statute of limitations period occurs during the pendency of a properly filed state post-conviction relief application; therefore, this period during which the PCR motion *is pending* does not count toward the one-year calculation. See

---

[1] Title 28 of the United States Code, section 2244(d)(1) creates a one year statute of limitations on habeas corpus petitions and reads in pertinent part:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(2).[2]  However, the time between the conclusion of direct review and the filing of the PCR motion is counted towards the one-year limitations period embodied in § 2244.  See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003)(section 2244(d) does not permit reinitiation of one-year limitations period that has ended before state PCR limitations period expired), cert. denied, 124 S. Ct. 328 (2003); Tinker v. Moore, 255 F.3d 1331, 1333-34 (11th Cir. 2001)(state court PCR petition timely filed after the expiration of one-year federal limitations period does not toll or reinitiate federal limitations period); Washington v. Byrd, No. CIV.A.00-6389, 2002 WL 461729 at *6 (E.D. Pa. March 22, 2002)(time spent "preparing" PCR motions does not toll one-year limitations period)(unpubl.); Powell v. Williams, 981 F. Supp. 1409, 1414 (D.N.M. 1997)(time between final judgment and commencement of state habeas proceedings is counted toward one-year limitations period); Hughes v. Irvin, 967 F. Supp. 775, 778 (E.D.N.Y. 1997)(time periods between various state PCR applications counts toward one-year limitations period).  Additionally, "the time

---

[2]  Title 28 of the United States Code, section 2244(d)(2) states that:

> (2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

8

-
-

during which a state prisoner may file a petition for a writ of certiorari in the United States Supreme Court from the denial of his state post-conviction petition does not toll the one year statute of limitations under 28 U.S.C. § 2244(d)(2)."  Stokes v. District Attorney, 247 F.3d 539, 542 (3d Cir. 2001).

In the instant case, Petitioner has failed to timely file his instant motion for habeas relief.  Specifically, on July 18, 1990, the New Jersey Supreme Court reversed the state appellate division and confirmed Petitioner's conviction.  Petitioner had ninety days thereafter to file for a writ of certiorari with the United States Supreme Court.  Therefore, on October 18, 1990, Petitioner's one-year statute of limitations began to run.  It expired on October 18, 1991.  There was nothing filed in either state of federal court to toll the statute of limitations as Petitioner did not file for PCR until December 9, 1992, in excess of a year beyond the filing deadline.

Even if this Court were to consider the start of the statute of limitations period to begin after disposition of his initial PCR, Petitioner's habeas motion would still be considered untimely, as the disposition of Petitioner's PCR motion became final on March 26, 1996, the day the New Jersey Supreme Court denied certification, and as Petitioner did not file the instant habeas motion until May 14, 1997, approximately six weeks beyond the expiration of the statute of limitations deadline, the

petitioner's application for a writ of habeas corpus is time-barred and will be dismissed, pursuant to 28 U.S.C. § 2244.

This Court concludes that the petition at issue was not filed timely, and therefore must be procedurally dismissed for failure to comply with the mandates of the AEDPA, 28 U.S.C. § 2244.

### ii. *petitioner has failed to exhaust in state court a portion of the claims asserted in his instant §2254 petition*

Alternatively, Petitioner has failed to raise and/or exhaust an issue he presents in the instant petition, and said petition should be dismissed on that basis as well.

A state prisoner applying for a writ of habeas corpus in federal court must first "exhaust[] the remedies available in the courts of the State," unless "there is an absence of available State corrective process[] or ... circumstances exist that render such process ineffective ... ."[3] 28 U.S.C. § 2254(b)(1). See also Rose v. Lundy, 455 U.S. 509, 515 (1982); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997), cert. denied, 532 U.S. 919 (2001) (finding that "Supreme Court precedent and the AEDPA mandate that prior to determining the merits of [a]

---

[3] Exhaustion of state remedies has been required for more than a century, since the Supreme Court's decision in Ex parte Royall, 117 U.S. 241 (1886). The exhaustion doctrine was first codified at 28 U.S.C. § 2254 in 1948, see Rose v. Lundy, 455 U.S. 509, 516-18 (1982), and was the subject of significant revisions in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. 104-132, 110 Stat. 1217 (April 24, 1996).

petition, [a court] must consider whether [petitioner] is required to present [his or her] unexhausted claims to the [state's] courts").

The exhaustion requirement is intended to allow state courts the first opportunity to pass upon federal constitutional claims, in furtherance of the policies of comity and federalism. Granberry v. Greer, 481 U.S. 129 (1987); Rose, 455 U.S. at 516-18. Exhaustion also has the practical effect of permitting development of a complete factual record in state court, to aid the federal courts in their review. Rose, 455 U.S. at 519.

A petitioner must exhaust state remedies by presenting his federal constitutional claims to each level of the state courts empowered to hear those claims, either on direct appeal or in collateral post-conviction proceedings. See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838 (1999) ("requiring state prisoners [in order to fully exhaust their claims] to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"); Ross v. Petsock, 868 F.2d 639 (3d Cir. 1989); 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.") Once a petitioner's federal claims have been fairly presented to the

11

state's highest court, the exhaustion requirement is satisfied. Picard v. Connor, 404 U.S. 270, 275 (1971); Castille v. Peoples, 489 U.S. 346, 350 (1989).

The petitioner generally bears the burden to prove all facts establishing exhaustion. Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993). This means that the claims heard by the state courts must be the "substantial equivalent" of the claims asserted in the federal habeas petition. Picard, 404 U.S. at 275. Reliance on the same constitutional provision is not sufficient; the legal theory and factual predicate must also be the same. Id. at 277.

Where any available procedure remains for the applicant to raise the question presented in the courts of the state, the applicant has not exhausted the available remedies. 28 U.S.C. § 2254(c). The Supreme Court has made clear that a § 2254 petition which includes unexhausted as well as exhausted claims, *i.e.*, a "mixed petition", must be dismissed without prejudice. In other words, if any of the claims asserted in the habeas petition are unexhausted, the entire petition must be dismissed. See Rose, 455 U.S. at 510 (this is referred to as the "total exhaustion" rule). However, in Crews v. Horn, 360 F.3d 146 (3d Cir. 2004), the Third Circuit has held that, while district courts have the discretion to stay "mixed petitions", when an outright dismissal could jeopardize the timeliness of a collateral attack, a stay is the only appropriate course of action. 360 F.3d at 152.

In the present case, it appears based on the state record that Petitioner failed to exhaust all state remedies before seeking federal habeas relief regarding certain claims asserted in the instant petition.  Specifically, Petitioner's allegations that he was provided with ineffective assistance of counsel because said counsel did not file a motion to suppress evidence of the lead residue found in the pocket of Petitioner's jacket (Ground One) was never previously raised in state court.

As the aforementioned Ground for relief was never fully raised or exhausted on the state level, Petitioner has failed to exhaust all state remedies with regards to that Ground.  Because the Ground was not actually and/or fairly presented for state court review, the Court is constrained to dismiss the entire petition, without prejudice, for failure to exhaust as required under 28 U.S.C. § 2254.  See Rose, 455 U.S. at 510.

In addition, there is no indication from Petitioner's habeas motion that Petitioner's non-exhaustion of state court remedies should be excused.  Petitioner has not shown that there is an absence of available state process with respect to his unexhausted claim.  Before exhaustion will be excused on this basis, "state law must clearly foreclose state court review of unexhausted claims."  Toulson, 987 F.2d at 987.

Thus, as a matter of comity, it is best left to the New Jersey courts to determine if they may still entertain

Petitioner's unexhausted claim.  District courts should dismiss petitions containing unexhausted claims in the absence of a state court decision clearly precluding further relief, even if it is not likely that a state court will consider the claims on the merits.  Banks v. Horn, 126 F.3d 206, 212-14 (3d Cir. 1997); see also Toulson, 987 F.2d at 989 ("Because no [New Jersey] court has concluded that petitioner is procedurally barred from raising his unexhausted claims and state law does not clearly require a finding of default, we hold that the district court should have dismissed the petition without prejudice for failure to exhaust state remedies").  Here, no state court has concluded that Petitioner is procedurally barred from raising his unexhausted claim.  Therefore, because New Jersey law does not clearly require a finding of default, this Court is not prepared to presume that Petitioner's claim in this petition would necessarily be barred from state court review.

Alternatively, the Court of Appeals for the Third Circuit has stated that, "if a prisoner could establish that the activities of the state authorities made the prisoner's resort to the state procedures in effect unavailable, exhaustion would be excused."  Mayberry v. Petsock, 821 F.2d 179, 184 (3d Cir.), cert. denied, 484 U.S. 946 (1987).  However, discovery and an evidentiary hearing should not be made available to a habeas petitioner who claims relief from the exhaustion rule "unless the

14

petitioner sets forth facts with sufficient specificity that the district court may be able, by examination of the allegations and the response, if any, to determine if further proceedings are appropriate." Id. at 186. "[T]he allegations of exhaustion must be at least as specific with respect to the facts allegedly excusing exhaustion as is required for allegations alleging constitutional deprivation as the basis for the habeas petition." Id. at 187.

Here, Petitioner alleges no facts suggesting that state procedures are in effect unavailable to him. Therefore, assuming *arguendo* that Petitioner's motion for habeas relief was not time-barred, the petition would nevertheless be dismissed as a mixed petition as Petitioner has failed to exhaust state court remedies for Ground One.

**E.    Certificate of Appealability.**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate

15

to deserve encouragement to proceed further." Miller-El v. Cockrell, 1537 U.S. 322 (2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Here, jurists of reason would not find the Court's procedural disposition of this case debatable. Accordingly, no certificate of appealability will issue.

## **CONCLUSION**

For the foregoing reasons, this Court finds that Petitioner has failed to timely file his habeas petition for relief. In the alternative, Petitioner has also failed to exhaust his available state court remedies or to allege facts sufficient to excuse failure to exhaust. The Court therefore will dismiss with prejudice the § 2254 habeas petition.

The Court further finds that no certificate of appealability will issue, insofar as Petitioner has failed to make a substantial showing of the denial of a constitutional right

pursuant to 28 U.S.C. § 2253(c)(2).  An appropriate Order accompanies this Opinion.

s/Garrett E. Brown, Jr.
HONORABLE GARRETT E. BROWN, JR.
Chief United States District Judge

Dated: June 29, 2006